# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PLATTE RIVER INSURANCE COMPANY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 17 C 5306 |
| MARK NICHOLLS, UBU SPORTS, INC., n/k/a ARTIFICIAL TURF SPORTS FIELD, INC., and TURF INDUSTRY, INC., | ) ) ) ) ) |
| Defendants. | ) |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Platte River Insurance Company sued Mark Nicholls, UBU Sports, Inc., and Turf Industry, Inc. to enforce an indemnification agreement. The Court entered a default judgment against UBU and Turf Industry after they failed to respond to Platte River's complaint. Platte River and Nicholls, the remaining defendant, have filed cross-motions for summary judgment.

## Background

The following facts are undisputed except where otherwise indicated. Nicholls is the founder and former CEO of UBU Sports, Inc., a company that produces synthetic turf products. At all relevant times, UBU was a wholly owned subsidiary of Turf Industry, Inc.

In 2015, Nicholls (acting on behalf of himself and Turf Industry) entered into an indemnity agreement with Platte River Insurance Company. Although the exact

meaning of the written agreement is a matter of dispute, it generally required Nicholls and Turf Industry to indemnify Platte River for claims or other liability arising from certain surety bonds issued by Platte River. The indemnity agreement also required Nicholls and Turf Industry to deposit collateral at Platte River's request.

After the parties signed the indemnity agreement, Platte River issued bonds to UBU to finance projects in Texas and New York. UBU eventually defaulted on its obligations regarding both projects, and Platte River began receiving claims for payment. In August 2016, at Platte River's instance, UBU and Turf Industry executed an agreement in which they agreed to deposit more than $200,000 with Platte River as collateral. Joseph Vrankin, then-president of both Turf Industry and UBU, signed the agreement on behalf of the companies; Nicholls was neither a signatory nor a party to the collateral agreement.

Platte River commenced this suit against Nicholls, UBU, and Turf Industry in 2017, seeking to enforce the indemnification and collateral provisions of the indemnification agreement. Platte River alleges that it is owed more than $175,000 (excluding fees and expenses) for its payments on claims arising under UBU's bonds. In March 2018, the Court entered a default judgment against UBU and Turf Industry, which failed to respond to the complaint. Nicholls and Platte River have filed cross-motions for summary judgment. For the reasons stated below, the Court denies both motions.

## Discussion

Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a);

2

*Martinsville Corral, Inc. v. Soc'y Ins.*, 910 F.3d 996, 998 (7th Cir. 2018).  In ruling on a motion for summary judgment, the Court construes the evidence and draws all reasonable inferences in favor of the non-moving party.  *Lapre v. City of Chicago*, 911 F.3d 424, 430 (7th Cir. 2018).  The moving party is entitled to summary judgment if "no reasonable jury could find for the other party based on the evidence in the record."  *Martinsville Corral*, 910 F.3d at 998.  These standards apply equally to cross-motions for summary judgment.  *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017).

The parties agree that Illinois law controls the interpretation of the contracts in this case.  "When the words in the contract are clear and unambiguous, they must be given their plain, ordinary, and popular meaning."  *Ritacca Laser Ctr. v. Brydges*, 2018 IL App (2d) 160989, ¶ 15, 100 N.E.3d 569, 574.  "A contract is ambiguous if it is subject to more than one reasonable interpretation."  *Gomez v. Bovis Lend Lease, Inc.*, 2013 IL App (1st) 130568, ¶ 14, 22 N.E.3d 1, 4.

If the court determines that the contract is unambiguous, it construes its meaning "as a matter of law without the use of parol evidence."  *Guterman Partners Energy, LLC v. Bridgeview Bank Grp.*, 2018 IL App (1st) 172196, ¶ 51, 105 N.E.3d 91, 103.  If a contract is ambiguous, however, the court may consult extrinsic evidence to resolve the ambiguity.  *Id.*

A.   **Scope of the indemnity agreement**

Platte River and Nicholls each argue that they are entitled to summary judgment based on the unambiguous language of the indemnity agreement.  Platte River contends that the agreement requires Nicholls to indemnify Platte River for the bonds it issued on behalf of UBU.  Nicholls contends that he agreed to indemnify Platte River

only with regard to bonds issued on behalf of the signatories to the agreement, namely himself and Turf Industry.

Platte River rests its argument on a single "whereas" clause in the indemnity agreement, which states:

> WHEREAS, the Undersigned, individually, jointly and severally with others and on behalf of any of its subsidiaries, affiliates or divisions of their subsidiaries . . . have a substantial interest in the Principal obtaining bonds; and, the Principal and/or the Undersigned may desire to or be required to furnish certain bonds, undertakings, or instruments of guarantee. . . .

Pl.'s Ex. A, General Indemnity Agreement, dkt. no. 39-1, at 1. Platte River contends that this clause makes Nicholls "liable to Platte River" because "UBU was a subsidiary of Turf Industry." Pl.'s Reply Br., dkt. no. 48, at 2.

This argument distorts the plain language of the provision. Though it is somewhat difficult to parse, the clause cannot be reasonably interpreted to require Nicholls to indemnify Platte River for bonds issued on behalf of Turf Industry's subsidiaries. The reference to subsidiaries does not suggest that Platte River would issue bonds on behalf of the subsidiaries. Precisely the contrary: the clause states that the subsidiaries have an interest in the *principal* obtaining bonds. The contract specifically defines the principals as Turf Industry, Inc. and Mark Nicholls (who are also "the Undersigned"), and notably, it identifies them without referencing their subsidiaries or affiliates. *See* General Indemnity Agreement, dkt. no. 39-1, at 1. The plain language of the "whereas" clause therefore forecloses Platte River's argument.

Indeed, if considered in isolation, this clause might suggest that Nicholls, not Platte River, is entitled to summary judgment because the clause limits Nicholls' indemnity obligation to bonds furnished on behalf of the principals, not on behalf of

4

other entities. But the Court does not consider that clause standing alone; rather, it construes the agreement "as a whole, viewing each provision in light of the other provisions." *Morningside N. Apartments I, LLC v. 1000 N. LaSalle, LLC*, 2017 IL App (1st) 162274, ¶ 15, 75 N.E.3d 413, 419. Notably, section two of the agreement, which defines the defendants' indemnification obligations, states that

> [t]he Undersigned . . . shall and will indemnify . . . the Surety against all demands, claims, loss, costs, damages, expenses and fees including any attorneys' fees whatsoever, and for and from any and all liability therefore, sustained or incurred by the Surety by reason of executing or procuring the execution of any said Bond(s), or any other Bond(s), which maybe already or hereafter are executed for or at the request of the Principal or the Undersigned. . . .

General Indemnity Agreement, dkt. no. 39-1, at 1. This agreement is not a model of clarity. But on close reading, it indicates that Nicholls must indemnify Platte River not only for bonds issued on behalf of the principals, but also those "executed for or at the request of the Principal or the Undersigned." Unlike the "whereas" clause, which indicates that the agreement concerns indemnity only for bonds obtained by the principals, section two suggests that the agreement is meant to cover all bonds issued at the principals' request. This broader definition thus could conceivably encompass the bonds issued on behalf of UBU as long as Turf Industry or Nicholls requested them.

The Court concludes that the agreement is susceptible to reasonable but conflicting interpretations of the scope of the indemnity clause and is therefore ambiguous. *See McManus v. Richards*, 2018 IL App (3d) 170055, ¶ 18 ("[I]f the language of the contract is susceptible to more than one meaning, it is ambiguous."). This ambiguity is significant because if the Court were to accept the broader reading of the indemnification agreement, neither party would be entitled to summary judgment: the parties have pointed to no evidence that establishes or refutes the proposition that

5

Platte River issued the subject bonds to UBU "for or at the request of" Nicholls or Turf Industry. Because neither party addresses Nicholls' potential liability under the broader reading of the agreement, the ambiguity precludes summary judgment. *See Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018) ("It is the movant's burden to demonstrate the absence of genuine issues of material fact.").

Though the Court may consider extrinsic evidence to attempt to resolve a facial ambiguity, *see Guterman Partners Energy*, 2018 IL App (1st) 172196, ¶ 51, 105 N.E.3d at 103, the evidence the parties cite is not dispositive. Both parties focus on the collateral agreement signed by Joseph Vrankin on behalf of UBU and Turf Industry. Nicholls contends that the fact that he was not made to sign the collateral agreement shows that neither he nor Platte River believed he was required to indemnify Platte River for the bonds that he issued on behalf of UBU. A reasonable factfinder could indeed draw that inference. Conversely, Platte River points out that it issued bonds on UBU's behalf before the collateral agreement was executed. This timing supports a reasonable inference that Platte River and Turf Industry understood the agreement to encompass the UBU bonds because, presumably, Turf Industry would not have deposited collateral for those bonds unless it believed it was already obligated to do so under indemnity agreement. And the fact that Turf Industry posted this collateral at all supports a reasonable inference that the parties understood the indemnification agreement to cover bonds issued on behalf of UBU.[1]

---

[1] Platte River's other argument concerning the collateral agreement—that Nicholls became bound to indemnify Platte River for the UBU bonds when Vrankin signed the collateral agreement for Turf Industry and UBU—is plainly meritless. Nicholls was not a party to the collateral agreement, and Vrankin cannot bind Nicholls *personally* simply because Vrankin was acting as an agent of Turf Industry and UBU. *See, e.g., Berg v.*

6

Because the extrinsic evidence permits reasonable inferences in favor of both parties, it does not resolve the patent ambiguity in the indemnification agreement, and summary judgment is therefore inappropriate. *See Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 351-52 (7th Cir. 2015) ("Where the parties offer competing reasonable inferences from extrinsic evidence, the disputed meaning of the contract is a question for the trier of fact not appropriately resolved through summary judgment.").

**B.     Damages**

Nicholls also disputes Platte River's damages calculation. First, he contends that Platte River overpaid a claim by improperly agreeing to pay interest on the bond amount. In response, Platte River points to section ten of the indemnity agreement, which gives it the "exclusive right" to "decide and determine whether any claim, demand, suit or judgment upon the Bond(s) shall be paid, settled, defended or appealed, and its determination shall be final, conclusive and binding upon the Undersigned." General Indemnity Agreement, dkt. no. 39-1, at 3. Platte River also cites evidence that it settled the claim for $160,000, instead of the original bond amount of $144,000, to avoid the expense of continued litigation. For his part, Nicholls points to no evidence that this decision was unreasonable or made in bad faith. *See Safeco Ins. Co. v. Renn*, No. 07 C 3024, 2011 WL 13258220, at *6 (N.D. Ill. Aug. 17, 2011) (holding, in the context of a similar indemnity agreement, that the plaintiff did not fail to mitigate damages because it "made its determination to pay the various bond claims in

---

*Groomsmart, Inc.*, 2014 IL App (2d) 130686-U, ¶ 14 ("While it is true that a corporation is only a legal entity and can act only through a person . . . it is even more fundamental that a contract cannot bind a nonparty.").

7

good faith"). Moreover, he fails to respond to Platte River's contentions in his reply brief. The Court therefore concludes that Nicholls has not identified a genuine factual dispute regarding the allegedly overpaid claim.

Nicholls next argues that summary judgment is inappropriate because Platte River has failed to collect payment on a bond that, if recovered, would reduce his damages. Platte River cites testimony that it failed to collect that bond payment only because UBU has not turned over the required paperwork. Under Illinois law, "[t]he duty to mitigate damages requires an injured party to exercise reasonable diligence and ordinary care in trying to minimize his damages." *Holland v. Schwan's Home Serv., Inc.*, 2013 IL App (5th) 110560, ¶ 213, 992 N.E.2d 43, 87. The testimony Nicholls cites shows that Platte River sought to recover this bond but that its efforts were frustrated by the inaction of one of the defendants in this case. *See* Framke Dep., dkt. no. 48-2, at 34:13-35:14. Nicholls does not respond to this argument in his reply brief, nor has he pointed to evidence that Platte River failed to exercise reasonable diligence and ordinary care to reduce its damages. Because neither of Nicholls' arguments concerning damages has merit, the damages calculations in this case do not pose an independent barrier to summary judgment.

## Conclusion

For the foregoing reasons, the Court denies the parties' cross-motions for summary judgment [dkt. nos. 38, 42]. The case is set for a status hearing on February 12, 2019 at 9:30 a.m. for the purpose of setting a trial date.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 8, 2019